

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KRISTEN ALICIA DALE,<br><br>　　　　　　　　　　Plaintiff,<br><br>v.<br><br>NANCY A. BERRYHILL, Acting Commissioner of Social Security,[1]<br><br>　　　　　　　　　　Defendant. | Case No.: 16-cv-2618-W (RNB)<br><br>**REPORT AND RECOMMENDATION REGARDING CROSS-MOTIONS FOR SUMMARY JUDGMENT**<br><br>**(ECF NOS. 16, 19)** |

This Report and Recommendation is submitted to the Honorable Thomas J. Whelan, United States District Judge, pursuant to 28 U.S.C. § 636(b)(1) and Civil Local Rule 72.1(c).

On October 20, 2016, plaintiff Kristen Alicia Dale filed a Complaint pursuant to 42 U.S.C. § 405(g) seeking judicial review of a decision by the Commissioner of Social Security denying her applications for a period of disability and disability insurance benefits and for Supplemental Security Income benefits. (ECF No. 1.)

---

[1] Nancy A. Berryhill is hereby substituted as the defendant in this case per Fed. R. Civ. P. 25(d).

1

Now pending before the Court and ready for decision are the parties' cross-motions for summary judgment. For the reasons set forth herein, the Court **RECOMMENDS** that plaintiff's motion for summary judgment be **GRANTED,** that the Commissioner's cross-motion for summary judgment be **DENIED**, and that Judgment be entered reversing the decision of the Commissioner and remanding this matter for further administrative proceedings.

## I. PROCEDURAL BACKGROUND

On October 25, 2012, plaintiff filed applications for a period of disability and disability insurance benefits and for Supplemental Security Income benefits, alleging disability beginning on January 4, 2004 due to back problems, depression, anxiety, alcohol dependence, alcoholic hepatitis, and liver cirrhosis. (Administrative Record ("AR") 207-08, 294-306.) After her applications were denied initially and upon reconsideration (AR 208, 225), plaintiff requested an administrative hearing before an administrative law judge ("ALJ"). (AR 227-32.) An administrative hearing was held on November 17, 2014. Plaintiff appeared at the hearing with counsel, and testimony was taken from her, two medical experts, and a vocational expert. (AR 75-124.)

As reflected in her March 30, 2015 hearing decision, the ALJ rendered a partially favorable decision, finding plaintiff disabled as of June 1, 2013. (AR 56-67.) The ALJ's decision became the final decision of the Commissioner on August 16, 2016, when the Appeals Council denied plaintiff's request for review. (AR 3-7.) This timely civil action followed.

## II. SUMMARY OF THE ALJ'S FINDINGS

In rendering her decision, the ALJ followed the Commissioner's five-step sequential evaluation process. *See* 20 C.F.R. §§ 404.1520, 416.920. At step one, the ALJ found that plaintiff had not engaged in substantial gainful activity since the alleged onset date, January 4, 2004. (AR 58.)

At step two, the ALJ found that plaintiff had the following severe impairments: "chronic pain syndrome secondary to degenerative disc disease of the lumbar spine, status-post L5-S1 fusion surgery in September 2005 and failed back surgery syndrome; major depressive disorder; a history of alcohol/opiate dependence; post-traumatic stress disorder (PTSD); and panic disorder with agoraphobia." (AR 59.) The ALJ found that plaintiff's impairments caused significant limitations to her ability to perform basic work activities. (*Id.*)

At step three, the ALJ found that plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the impairments listed in the Commissioner's Listing of Impairments. (AR 59.)

Next, the ALJ determined that "[p]rior to June 1, 2013, [plaintiff] had the residual functional capacity[2] to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except lifting no more than 10 pounds frequently; never climbing ladders/ropes/scaffolds; no more than occasional stooping, kneeling, crouching, balancing, crawling, or climbing stairs/ramps; and no unprotected heights or hazardous machinery. The [plaintiff] is further limited to understanding, remembering, and carrying out no more than simple, 1-2 step job instructions (SVP 2 and below) with no in-person interaction with the public, but telephone interaction is not limited." (AR 60.) However, beginning on June 1, 2013, plaintiff had the additional limitations of "be[ing] off-task 20% of the workday and [missing] 2-4 days per month due to worsening mental health issues and decreased concentration issues related to pain and side effects from pain medication." (AR 63.)

The ALJ then proceeded to step four of the sequential evaluation process. At this step, the ALJ found that plaintiff was unable to perform any of her past relevant work. (AR 64.) For purposes of his step five determination, the ALJ adduced and accepted the

---

[2] Residual functional capacity ("RFC") is the most an individual can do despite his or her limitations. *See* 20 C.F.R. §§ 404.1545(a), 416.945(a).

testimony of a vocation expert (VE) that, prior to June 1, 2013, an individual with plaintiff's vocational profile and RFC could perform the following unskilled jobs that existed in significant numbers in the national economy: document preparer (DOT[3] 204.587-018); ticket counter (DOT 219.587-010); and zipper trimmer (DOT 734.687-094). (AR 65-66.) However, with plaintiff's additional limitations beginning on June 1, 2013, there were no jobs that an individual with plaintiff's vocational profile and RFC could perform beginning on that date. (AR 66.)

### III. SOLE ISSUE IN DISPUTE

The sole issue in dispute in this case is whether the ALJ committed legal error at step five of the sequential evaluation process. Specifically, plaintiff contends that the ALJ erred in accepting the VE's testimony that an individual with plaintiff's vocational profile and RFC could perform the three jobs identified by the VE. According to plaintiff, the reasoning levels required for those jobs according to the DOT conflict with the ALJ's finding that plaintiff was limited to understanding, remembering, and carrying out no more than simple, 1-2 step job instructions, and the ALJ erred when she failed to question the VE about this conflict. (*See* ECF No. 16-1 at 6-9.) In response, the Commissioner implicitly concedes that the ALJ erred in accepting the VE's testimony, but argues that the error was harmless with respect to the zipper trimmer job. (ECF No. 19-1 at 5-8.)[4]

---

[3] "DOT" refers to the Dictionary of Occupational Titles.

[4] With respect to the other two jobs identified by the VE (document preparer and ticket counter), the Commissioner does not dispute that the ALJ erred or argue that the ALJ's error was harmless. While the Court concurs with the Commissioner that there are a sufficient number of zipper trimmer jobs in the San Diego region and nationally to meet the Commissioner's burden at step five, the Court disagrees with the Commissioner that the ALJ's step five error with respect to the zipper trimmer job was harmless.

## IV. STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), this Court reviews the Commissioner's decision to determine whether the Commissioner's findings are supported by substantial evidence and whether the proper legal standards were applied. *DeLorme v. Sullivan*, 924 F.2d 841, 846 (9th Cir. 1991). Substantial evidence means "more than a mere scintilla" but less than a preponderance. *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 28 L. Ed. 2d 842 (1971); *Desrosiers v. Secretary of Health & Human Servs.*, 846 F.2d 573, 575-76 (9th Cir. 1988). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401. This Court must review the record as a whole and consider adverse as well as supporting evidence. *Green v. Heckler*, 803 F.2d 528, 529-30 (9th Cir. 1986). Where evidence is susceptible of more than one rational interpretation, the Commissioner's decision must be upheld. *Gallant v. Heckler*, 753 F.2d 1450, 1452 (9th Cir. 1984).

## V. DISCUSSION

### A. The ALJ's burden to reconcile conflicts between the VE's testimony and the DOT

At step five of the sequential evaluation process, the Commissioner has the burden "to identify specific jobs existing in substantial numbers in the national economy that [a] claimant can perform despite [his] identified limitations." *Zavalin v. Colvin*, 778 F.3d 842, 845 (9th Cir. 2015) (alterations in original) (quoting *Johnson v. Shalala*, 60 F.3d 1428, 1432 (9th Cir. 1995)) (citing 20 C.F.R. § 416.920(g)). In making a disability determination at this step, the ALJ relies primarily on the DOT for "information about the requirements of work in the national economy." *Massachi v. Astrue*, 486 F.3d 1149, 1153 (9th Cir. 2007). "The DOT describes the requirements for each listed occupation, including the necessary General Education Development ('GED') levels; that is, 'aspects of education (formal and informal) . . . required of the worker for satisfactory job performance.'" *Zavalin*, 778 F.3d at 846 (quoting DOT, App. C, 1991 WL 688702 (4th ed. 1991)). "The

GED levels [include] the reasoning ability required to perform the job, ranging from Level 1 (which requires the least reasoning ability) to Level 6 (which requires the most)." *Id.* (citing DOT, App. C, 1991 WL 688702).

In addition to the DOT, the ALJ "uses testimony from vocational experts to obtain occupational evidence." *Massachi*, 486 F.3d at 1153; *see also Zavalin*, 778 F.3d at 846. Generally, the VE's testimony should be consistent with the DOT. *See* Social Security Ruling ("SSR")[5] 00-4p, 2000 WL 1898704, at *2 (Dec. 4, 2000); *Massachi*, 486 F.3d at 1153. But when conflicts occur, neither the DOT nor the VE's evidence automatically trumps. *Massachi*, 486 F.3d at 1153 (citing SSR 00-4p at *2). "Thus, the ALJ must first determine whether a conflict exists." *Id.*

"When there is an apparent conflict between the vocational expert's testimony and the DOT—for example, expert testimony that a claimant can perform an occupation involving DOT requirements that appear more than the claimant can handle—the ALJ is required to reconcile the inconsistency." *Zavalin*, 778 F.3d at 846 (citing *Massachi*, 486 F.3d at 1153-54). The ALJ must ask the VE whether his or her testimony conflicts with the DOT. *Massachi*, 486 F.3d at 1153-54; SSR 00-4p at *4. If it does conflict, "the ALJ must then determine whether the vocational expert's explanation for the conflict is reasonable and whether a basis exists for relying on the expert rather than the [DOT]." *Id.* at 1153. A failure to ask the VE whether his or her testimony conflicts with the DOT may be harmless error if there is no conflict, or if the VE provides "sufficient support for [his or] her conclusion so as to justify any potential conflicts." *Id.* at 1154, n.19; *see also Hann v. Colvin*, No. 12-cv-06234, 2014 WL 1382063, at *15 (N.D. Cal. Mar. 28, 2014).

---

[5] "SSRs reflect the official interpretation of the [Social Security Administration] and are entitled to 'some deference' as long as they are consistent with the Social Security Act and regulations." *Avenetti v. Barnhart*, 456 F.3d 1122, 1124 (9th Cir. 2006) (quoting *Ukolov*, 420 F.3d at 1005 n.2).

### 2. Analysis

The DOT identifies the occupation of zipper trimmer as requiring a reasoning level of 2. *See* DOT 734.687-094, *available at* 1991 WL 679969. The DOT defines Reasoning Level Two as follows: "Apply commonsense understanding to carry out detailed but uninvolved written or oral instructions. Deal with problems involving a few concrete variables in or from standardized situations." APPENDIX C - COMPONENTS OF THE DEFINITION TRAILER, 1991 WL 688702. By way of contrast, the DOT defines Reasoning Level One as follows: "Apply commonsense understanding to carry out simple one- or two-step instructions. Deal with standardized situations with occasional or no variables in or from this situations encountered on the job." *Id.*

In *Rounds v. Comm'r Social Sec. Admin.*, 807 F.3d 996 (9th Cir. 2015), the Ninth Circuit held that an apparent conflict exists between an RFC that limits a person to one- and two-step tasks and the demands of Level Two reasoning, which requires a person to "carry out detailed but uninvolved written or oral instructions." *Rounds*, 807 F.3d at 1003 ("Only tasks with more than one or two steps would require 'detailed' instructions."); *see also Tester v. Colvin*, 624 F. App'x 485, 487-88 (9th Cir. 2015) (finding that the plaintiff's RFC for "simple, 1-2 step work" is in apparent conflict with Reasoning Level Two). In making this determination, the Ninth Circuit relied on the close similarity in language between reasoning level one, which includes the limitation to carrying out "simple one- or two-step instructions," and the plaintiff's RFC limitation to "one to two step tasks." *Rounds*, 807 F.3d at 1003.

Based on the reasoning of *Rounds*, the Court finds that there was an apparent conflict between the VE's testimony that an individual with plaintiff's vocational profile and RFC could perform the zipper trimmer job and the DOT, which the ALJ failed to address. Similar to *Rounds*, "[b]ecause the ALJ did not recognize the apparent conflict between [plaintiff's] RFC and the demands of Level Two reasoning, the VE did not address whether the conflict could be resolved." *Rounds*, 807 F.3d at 1004. As a result, the Court is unable

to determine whether substantial evidence supports the ALJ's step five finding with respect to the zipper trimmer job.

In *Rounds*, the Ninth Circuit also found that the ALJ's failure to reconcile this apparent conflict was not harmless. It reasoned as follows:

> "In his RFC assessment, the ALJ did not merely restrict Rounds to 'simple' or 'repetitive' tasks. Instead, he expressly limited her to 'one to two step tasks,' apparently to address her 'moderate' problems with memory and concentration. There is no explanation in the record as to why the VE or the ALJ may have believed that Rounds' specific limitation to "one to two step tasks" should not be taken at face value. As such, the record does not support a conclusion that the ALJ's failure to resolve this apparent conflict was harmless error. This Court "cannot affirm the decision of an agency on a ground that the agency did not invoke in making its decision." *Zavalin*, 778 F.3d at 848 (*quoting Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1054 (9th Cir.2006)) (holding that ALJ's failure to reconcile apparent conflict between RFC and DOT was not harmless error)." *Rounds*, 807 F.3d at 1004.

The Ninth Circuit's rationale for rejecting the Commissioner's harmless error argument in Rounds applies with equal force here. The Court therefore recommends that this case be remanded for further proceedings to enable the ALJ to determine (a) whether there is a reasonable explanation to justify relying on the VE's previous testimony and/or (b) whether the VE is able to identify other jobs that require level one reasoning and are suitable for someone with plaintiff's limitations prior to June 1, 2013. *See Rounds*, 807 F.3d at 1004 & n.5; *see also Hill v. Astrue*, 698 F.3d 1153, 1162 (9th Cir. 2012); *Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004).

## VI. CONCLUSION AND RECOMMENDATION

For the foregoing reasons, this Court **RECOMMENDS** that plaintiff's motion for summary judgment be **GRANTED,** that the Commissioner's cross-motion for summary judgment be **DENIED,** and that Judgment be entered reversing the decision of the Commissioner and remanding this matter for further administrative proceedings.

Any party having objections to the Court's proposed findings and recommendations shall serve and file specific written objections within 14 days after being served with a copy of this Report and Recommendation. *See* Fed. R. Civ. P. 72(b)(2). The objections should be captioned "Objections to Report and Recommendation." A party may respond to the other party's objections within 14 days after being served with a copy of the objections. *See* Fed. R. Civ. P. 72(b)(2). *See id.*

Dated: April 5, 2018

ROBERT N. BLOCK
UNITED STATES MAGISTRATE JUDGE